## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| **PHILLIP HINTON,** )  | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
|     vs. ) | **CAUSE NO. 1:14-cv-1266-WTL-MJD** |
| ) | |
| **SYSCO INDIANAPOLIS, LLC,** ) | |
| ) | |
|     **Defendant.** ) | |

### ENTRY ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This cause is before the Court on Sysco Indianapolis, LLC's ("Sysco") motion for partial summary judgment (Dkt. No. 57). Sysco moves for summary judgment on Plaintiff Phillip Hinton's race discrimination claims brought pursuant to Title VII and § 1981. This motion is fully briefed, and the Court, being duly advised, **GRANTS** the motion for the reasons, and to the extent, set forth below.

### I.    STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the nonmoving party must be believed and all reasonable inferences must be drawn in the nonmovant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations,

that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490. Finally, the nonmoving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.,* 242 F.3d 713, 723 (7th Cir. 2001).

## II.    BACKGROUND

The following facts are recited in Sysco's Statement of Material Facts Not in Dispute, supported by citation to evidence in the record, and undisputed by Hinton.[1] Material facts disputed by Hinton are construed in the manner most favorable to him as the nonmoving party.[2]

From 2008 until July 1, 2013, Hinton worked in Sysco's warehouse as an order selector on the night shift. Andre Robinson became Sysco's director of human resources in 2008 as well, overseeing all aspects of its personnel functions. Both Hinton and Robinson are African American. Danny Mertes became director of warehousing in February 2013 and was responsible for all functions related to Sysco's warehouse. In that position, Mertes reported to Darrell Pierce, Sysco's vice president of operations.

Throughout Hinton's employment with Sysco, he and other order selectors were members of and were represented by Teamsters Local No. 135 (the "Union"), and their terms and conditions of employment were governed by a collective bargaining agreement ("CBA"). From approximately 2011 until his termination in 2013, Hinton served as a Union steward. There were two CBAs in effect during Hinton's employment, one from January 19, 2008,

---

[1] Sysco raises several evidentiary issues, asking that the Court not consider certain exhibits presented by Hinton but provided to him by Sysco through its responses to discovery. Because the inclusion of these exhibits does not alter the Court's decision in this matter, the Court need not address Sysco's concerns.

[2] The parties include in their statements of fact several facts that relate to Hinton's retaliation claims. Those facts are not included here as Hinton's retaliation claims are not at issue in Sysco's summary judgment motion.

through March 2, 2013, and another from March 3, 2013, through March 3, 2018. *See* Dkt. Nos. 58-6, 58-7.[3] Both CBAs included Uniform Rules and Regulations, setting out prohibited conduct and corresponding penalties, which applied to all employees represented by the Union. The Uniform Rules and Regulations in the CBAs made certain conduct "subject to discharge," meaning that Sysco had the discretion to terminate an employee for such conduct without first going through any progressive discipline. Section 3(c) of the Union Rules and Regulations provided that an employee would be "subject to discharge" for "theft, dishonesty of any kind, or unauthorized possession of [Sysco] property." Each CBA also incorporated disciplinary procedures with respect to order selectors' productivity and accuracy. If an employee covered by the CBA received progressive discipline for violating one of the Uniform Rules & Regulations or the CBA's productivity and accuracy standards, that discipline would count against the employee for only nine months.

On June 25, 2013, upon reporting to work, Hinton learned that Justin Thurman, another order selector, was absent from work for the third consecutive day without contacting management to report his absence. Hinton also learned that Thurman was absent because he was incarcerated. When Hinton learned those things, he knew that under the Uniform Rules and Regulations, because Hinton did not show up for work or call in to explain his absence for three consecutive work days, he would be considered to have voluntarily quit, and his employment would be terminated.

On June 25, 2013, at approximately 6:01 p.m., Hinton used his cell phone to call Sysco's attendance hotline and left a message in which he said he was Thurman and that he would be

---

[3] The Court brings to Sysco's attention that pages 35 through 52 of Docket 58-7 are not part of the CBA and do not appear to pertain to this case, should it like to correct the record.

3

absent from work that night because he was sick. In leaving that message, Hinton knew that he was making two false statements: that he was Thurman; and that Thurman was absent because he was sick. Later that evening, Hinton went to the warehouse office to speak with management about a production issue. Hinton overheard Josh Cosby and Brian Dixon, both supervisors, laughing. Dkt. No. 58-5 at 33. Cosby and Dixon were listening to the attendance hotline recording of Hinton's call. *Id.* Dixon guessed about the caller's identity. *Id.* Dixon said it sounded like Hinton. *Id.* at 34. Hinton informed them that he was the caller. *Id.* Later that evening, Hinton asked his manager, Jason Walls, to erase the message he had left, because Hinton was afraid it would cause problems for him. Walls would not do so. That night, Hinton also asked Cosby to erase the message, but Cosby also refused.

    Walls called Robinson that night to tell him about the incident. During his investigation of Hinton's conduct, Robinson spoke separately with Walls, Dixon, and Cosby, and learned about the message Hinton had left and his effort to get it erased. After talking with Walls, Dixon, and Cosby about what had happened and listening to the message that Hinton admitted to leaving, Robinson concluded that Hinton had committed an act of dishonesty in his dealings with Sysco. Robinson consulted with Pierce, Mertes, and Walls about his investigation and findings. Pierce, Mertes, and Robinson decided that Sysco should terminate Hinton's employment for violating Section 3(c) of the Union Rules and Regulations. Sysco's President, Steve Neely, had the ability to veto that decision but did not do so. On July 1, 2013, Sysco terminated Hinton's employment for dishonesty in violation of Section 3(c) of the Union Rules and Regulations.

    In the nine months prior to June 27, 2013, the date on which Robinson prepared the termination notice for Hinton, Sysco had issued Hinton nine performance and productivity warnings, including one for miszoning pallets; another for attempting to cause a work stoppage

4

by telling other night shift order selectors to come to work late to vote in the election, even though polls closed at the same time the night shift started; one for contributing to unsanitary or poor housekeeping conditions in violation of the CBA; and warnings for lack of productivity.

On the date of his termination, Hinton and the Union asked Sysco to reinstate Hinton and reduce his discharge to a five-day suspension. On July 9, 2013, Hinton and the Union filed a grievance claiming that Sysco discharged Hinton without just cause in violation of the CBA and asking that Sysco reinstate him. Pierce, Mertes, and Robinson rejected Hinton's request for reinstatement and denied his grievance. The Union took Hinton's grievance to arbitration, resulting in an evidentiary hearing before an arbitrator. On June 14, 2014, the arbitrator issued a decision finding that Sysco had terminated Hinton for dishonesty and that his discharge was for just cause.

Hinton filed three charges of discrimination with the Equal Employment Opportunity Commission. *See* Compl. ¶ 2. He received right-to-sue letters on all charges on May 3, 2014. *Id.* Hinton timely filed this lawsuit on July 29, 2014.

### III.    DISCUSSION

To survive a motion for summary judgment on race discrimination claims under Title VII and § 1981, a plaintiff must point to evidence that satisfies either the direct or indirect method of proof.[4] *See Egonmwan v. Cook Cty. Sheriff's Dep't*, 602 F.3d 845, 850 n.7 (7th Cir. 2010) ("The same requirements for proving [race] discrimination apply to claims under Title VII, § 1981, and § 1983.").[5] Hinton acknowledges that both methods are available to him, but he presents facts

---

[4] In reviewing grants of summary judgment, the Seventh Circuit still uses this approach despite its recent questions regarding "the continued utility of analyzing discrimination claims through the 'direct' and 'indirect' methods of proof." *Simpson v. Beaver Dam Cmty. Hosps., Inc.*, 780 F.3d 784, 789-90 (7th Cir. 2015).

[5] Because the methods of proving discrimination are the same under Title VII and § 1981, the Court analyzes both claims together.

5

and arguments only in the context of supporting a *prima facie* case of race discrimination. He thus pursues his claim under the indirect method only. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) (undeveloped, conclusory, or unsupported arguments not considered); *Weber v. Univ. Research. Assoc., Inc.*, 621 F.3d 589, 592-93 (7th Cir. 2010) (plaintiff who did not attempt to present any direct evidence of discrimination or retaliation failed to sufficiently raise the direct method of proof at district court to preserve the issue for appeal). Accordingly, the Court examines Hinton's claim under the indirect method of proof.

To avoid summary judgment under the indirect method, Hinton must establish "that he (1) belongs to a protected class, (2) met his employer's legitimate performance expectations, (3) suffered an adverse employment action, and (4) was treated worse than similarly situated employees outside the protected class." *Bates v. City of Chicago*, 726 F.3d 951, 955 (7th Cir. 2013) (quoting *Rodgers v. White*, 657 F.3d 511, 517 (7th Cir. 2011)). If a plaintiff establishes his *prima facie* case, the burden shifts to the employer to present a legitimate, non-discriminatory reason for the adverse employment action. *Bates*, 726 F.3d at 955. On such a showing, the burden then shifts back to the plaintiff to show that the employer's proffered reason is a pretext for discrimination. *Id.* "The ultimate question . . . , and that which is relevant here, is 'whether a reasonable jury could find prohibited discrimination.'" *Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 853 (7th Cir. 2015) (quoting *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014)).

It is undisputed that Hinton is a member of a protected class and that his termination is an adverse employment action.[6] He has thus satisfied the first and third elements of his *prima facie*

---

[6] While Sysco addresses in its briefs other incidents that it believes Hinton claims were adverse actions, the Court reads Hinton's brief in response as asserting no adverse action other than his termination. *See, e.g.*, Dkt. No. 60 at 20 (Hinton argues that he "has presented sufficient

case. Sysco argues, however, that Hinton cannot satisfy the other elements. Sysco denies that Hinton met its legitimate performance expectations and also argues that Hinton has not identified a similarly situated employee outside the protected class who was treated more favorably.

### A. Legitimate Expectations and Similarly Situated Employees

Sysco argues that it "terminated Hinton's employment for dishonesty, pursuant to Section 3(c) of the [CBA] rules." Dkt. No. 58 ¶ 45. Hinton does not dispute that he engaged in the conduct Sysco considered dishonest. *See* Dkt. No. 60 ¶ 36. Rather, he argues that other employees outside his protected class engaged in similar misconduct and were treated more favorably. *See id.* at 21. Specifically, in response to Sysco's motion, Hinton asserts that Jorge Parra, Justin Thurman, and he engaged in similar misconduct, were subjected to the same performance standards, and their discipline decisions involved at least one of the same decisionmakers, but Parra and Thurman were not terminated. *Id.* at 21-24.

The legitimate expectation and similarly situated elements of the *prima facie* case "merge in cases of discriminatory discipline; the inquiry is whether a[n] [employee not in the protected class] engaged in similar misconduct yet received lighter punishment." *Baker v. Macon Resources, Inc.*, 750 F.3d 674, 676 (7th Cir. 2014) (applied in age discrimination context) (citing *Rodgers*, 657 F.3d at 517 (applying merged test in race discrimination context); *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 730 (7th Cir. 2011) (same)). "[W]hen uneven discipline is the basis for a claim of discrimination, the most-relevant similarities are those between the

---

facts to prove a prima facie case of race discrimination regarding his termination"). Accordingly, for purposes of this Entry, the Court considers Hinton's termination as the only adverse employment action alleged by Hinton.

7

employees' alleged misconduct, performance standards, and disciplining supervisor."[7] *Rodgers*, 657 F.3d at 518.

"[I]n deciding whether two employees have engaged in similar misconduct, the critical question is whether they have engaged in conduct of comparable seriousness. Comparable seriousness may be shown by pointing to a violation of the same company rule or to conduct of similar nature." *Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 689 (7th Cir. 2007) (internal citations omitted). Employees are not considered similarly situated where, even if they engaged in similar misconduct, "'differentiating or mitigating circumstances [] would distinguish their conduct or the employer's treatment of them.'" *Antonetti v. Abbott Labs.*, 563 F.3d 587, 592 (7th Cir. 2009) (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000)). Thus, the Court must determine whether Parra or Thurman is similarly situated to Hinton.

### 1.     *Jorge Parra*

Parra is not similarly situated to Hinton because differentiating circumstances distinguish Sysco's treatment of Parra. Parra, an order selector who is Hispanic, began working for Sysco in 2000. In November 2009, Parra told Robinson that he had been working for Sysco under a false name because, until recently, he had not been authorized to work in the United States. Until Parra came forward, neither Sysco nor the Union knew that he had been working under a false name. Parra gave his citizenship documentation to Robinson, apologized, and asked for another

---

[7] Viewing the facts in the light most favorable to Hinton, the Court considers Robinson, Pierce, and Mertes decisionmakers with respect to Hinton's termination. For purposes of this Entry, the Court simplifies its analysis, assuming that the same decisionmaker disciplined Parra, Thurman, and Hinton. With respect to Parra and Hinton, however, the only common decisionmaker was Robinson, and only two of Hinton's decisionmakers, Robinson and Mertes, were involved in Thurman's discipline.

chance.  Parra did not ask Sysco to cover up what he had done or to erase the false information in his employment application.  At the time he told Robinson, Parra was Sysco's top order selector, selecting more cases error-free than any of his co-workers, such that management considered him an exemplary employee.  Dkt. No. 58 ¶ 62.  Parra had been honored for having an excellent record of selecting items without error.  *Id.*  At the time Parra came forward to Robinson, he had not been disciplined during the previous nine months.  Because Parra had come forward on his own to admit his conduct and provide accurate documentation, and because he was a highly productive and accurate worker who had not been disciplined in the previous nine months, Robinson and Charles Guinn, then-vice president of operations, suspended Parra for five days instead of terminating him.

Parra's misconduct – engaging in dishonesty – was the same conduct for which Hinton was terminated.  Parra, however, received a five-day suspension rather than termination.  By applying lesser discipline, Sysco acknowledged that Parra, at the time, was its top order selector, an exemplary employee, and had been honored across the company for having such an excellent record of selecting items without error.  Sysco also attributes the difference in severity in discipline to the fact that Parra had not been disciplined in the nine months prior to his suspension.  Dkt. No. 58 at ¶ 16.  Furthermore, it is undisputed that "[i]f an employee covered by the CBA received [] discipline for violating one of the Rules . . . that discipline would count against the employee for only nine months."  Dkt. No. 58 ¶ 16 (citing Dkt. Nos. 58-6 at 32; 58-7 at 31 ("Each offense against an employee's record that is 9 months old shall be canceled."); *see also* Dkt. No. 60 ¶ 8.

Although Hinton disputes that Parra's "disciplinary record was clean," he does not dispute that Parra had not been disciplined in the nine months preceding his suspension; nor does

9

he point to any evidence in the record that would show otherwise.[8] Dkt. No. 60 ¶ 114 (citing Dkt. No. 58 ¶ 63). Because Parra did not receive discipline in the nine months preceding his suspension, prior discipline could not be considered in determining the disciplinary measures to be taken against him for his dishonesty. Hinton, on the other hand, received nine performance and productivity warnings in the nine months prior to his termination, distinguishing him from Parra. Dkt. No. 58 ¶ 48. Hinton, therefore, was not similarly situated to Parra.

Hinton includes additional facts not in dispute related to Parra receiving a termination notice on February 13, 2013, for leaving work without permission during work hours and abusing the attendance policy. *See* Dkt. No. 60 ¶ 72. Parra was either never terminated or was terminated and reinstated. *Id.* at ¶ 76. Although Hinton described Parra's act as one of dishonesty (*see* Dkt. No. 60 at 23), Sysco did not characterize it as such. Rather, in the performance warning notice, Sysco found Parra to have violated Section 3(j) of the Uniform Rules and Regulations: "Failure to obtain proper authorization to leave premises during work hours." Dkt. No. 61-10 at 3 (quoting Dkt. No. 58-6 at 30). On this occasion, Parra did not violate the same rule as Hinton, and the act, therefore, is not of comparable seriousness to an act of dishonesty. *Cf. Peirick*, 510 F.3d at 691 (finding coaches similarly situated who "did not engage in the exact same misconduct as alleged of Peirick,[but] [] violated the very same rules").

As the Seventh Circuit has repeatedly stated, "[a] federal court does not sit as a 'super-personnel department,' second-guessing an employer's legitimate concerns about an employee's

---

[8] Hinton relies on Exhibits 130-144 to Robinson's deposition (Dkt. No. 61-10 at 2-16) to support his contention that Parra did not have a clean disciplinary record. *See* Dkt. No. 60 ¶¶ 114-15. These disciplinary records do not show that Parra received discipline in the nine months preceding his suspension. *See* Dkt. No. 61-10 at 2-16. As noted, according to the terms of the CBA, "[e]ach offense against an employee's record that is 9 months old shall be canceled," which means such discipline no longer exists at the end of nine months. Dkt. Nos. 58-6 at 32; 58-7 at 31.

performance." *Mintz v. Caterpillar Inc.*, 788 F.3d 673, 680 (7th Cir. 2015) (citations omitted); *Kohls v. Beverly Enterprises Wisconsin, Inc.*, 259 F.3d 799, 806 (7th Cir. 2001) (quoting *Dale v. Chicago Tribune. Co.*, 797 F.3d 458, 464 (7th Cir. 1986)). The Court does not second-guess Sysco's classification of Parra's conduct as an attendance issue rather than an act of dishonesty. Even if Parra's act were considered an act of dishonesty, differentiating or mitigating circumstances distinguish Sysco's reason for either not terminating or reinstating Parra: Unlike Hinton, Parra again did not have any disciplinary warnings in the nine months prior to receiving the February 13, 2013, discipline. *See* Dkt. No. 61-10 at 2-16. For a second time, Parra is not similarly situated to Hinton.

### 2. *Justin Thurman*

Thurman is also not similarly situated to Hinton. Unlike Parra and Hinton, Thurman never engaged in an act of dishonesty or similar misconduct that violated Section 3(c) of the Uniform Rules and Regulations. Instead, he had three active disciplinary warnings for attendance issues, which peaked in late June 2013 when he received a fourth disciplinary action for missing three consecutive days of work without notification to Sysco. Sysco deemed Thurman's late June 2013 absences a voluntary termination. Although, like Hinton, Thurman had active disciplinary warnings, they were for attendance issues only, and unlike Hinton, he had four rather than nine active warnings. Sysco decided to reinstate Thurman because of his "recent work history and the fact that [Sysco] knew Thurman was in jail" during his absences. Dkt. No. 60 at ¶ 104.

Hinton argues that his misconduct and Thurman's were of comparable seriousness because they were both terminable offenses. *See* Dkt. No. 60 at 23. The Uniform Rules and Regulations in effect at the time describe the consequence for being absent for three successive

11

work days without notification as a "voluntary quit." *See* Dkt. No. 58-7 at 30. This is not the same as the consequence for an act of dishonesty, "subject to discharge," *see id.* at 27, which meant that Sysco had the discretion to terminate an employee for such conduct without first applying progressive discipline, Dkt. No. 58 ¶ 14. This difference distinguishes Thurman's inaction, not a terminable offense, from Hinton's act. Furthermore, Thurman's being unable to call in to work to report absences because of incarceration is not of comparable seriousness to Hinton's, albeit possibly well-intentioned, misrepresentation of his identity in a call to the attendance hotline and subsequent attempt to have the recording of the call erased. Thus, Thurman did not engage in misconduct similar to Hinton. Accordingly, Thurman is not similarly situated to Hinton.

## IV.   CONCLUSION

Because Hinton has not identified a similarly situated employee who was treated more favorably, he has failed to establish a *prima facie* case of race discrimination under either Title VII or § 1981, and Sysco is entitled to summary judgment on those claims. Accordingly, for the reasons set forth above, Sysco's motion for partial summary judgment (Dkt. No. 57) is **GRANTED** with regard to Hinton's race discrimination claims under both Title VII and § 1981. Hinton's claims of retaliation in violation of both Title VII and § 1981 remain at issue in this case. This cause is set for trial beginning on June 6, 2016. The final pretrial conference is scheduled for May 6, 2016. The parties are reminded of the required pretrial obligations as set forth in paragraph VIII of the case management plan (Dkt. No. 25).

SO ORDERED: 4/11/16

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana